IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| DON ELVIS WRIGHT, | ) | CASE NO.5:19-CV-00572 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, *et al.* | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Defendants. | ) | |

## **Introduction**

Before me by referral[1] is a *pro se* action by Don Wright under 42 U.S.C. § 402(g) seeking judicial review of a decision of the Commissioner of Social Security that denied Wright's claim for divorced spouse benefits for the two-year period prior to the date of Wright's application for benefits.[2] The Commissioner has answered and moved to dismiss,[3] which motion Wright opposed.[4] The Commissioner also filed the transcript of the

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge Benita Y. Pearson in a non-document order entered on March 19, 2019.
[2] ECF No. 1.
[3] ECF No. 10.
[4] ECF No. 14.

administrative proceedings.[5] Pursuant to my administrative order[6] the parties briefed their positions.[7]

For the reasons stated below, I will recommend that the Commissioner's decision be affirmed.[8]

## Facts

The relevant facts are straightforward and undisputed. Wright married C.E. Sieber in 1972, the couple divorced in 1988 and Sieber died in 2005.[9] In 2008, Wright went to a Social Security office to apply for a new Social Security card because he had changed his middle name.[10] Further, in January 2009, the month he turned 62, Wright filed an application for all retirement benefits to which he was personally entitled, and was awarded such benefits commencing at that time.[11]

In May 2017, however, Wright was notified that he had been misinformed by Agency representatives in 2009 as to what benefits were available and most advantageous

---

[5] ECF Nos. 11, 12.
[6] ECF No. 13.
[7] ECF Nos. 15 (Wright), 21 (Commissioner).
[8] Although the Commissioner's answer concluded with a request that this matter be dismissed with prejudice (ECF No. 10 at 4), the Commissioner's brief concludes with a prayer that the Commissioner's decision be affirmed. ECF No. 21 at 11. Where, as here, the Commissioner seeks to have judicial review of his decision under 42 U.S.C. § 402(g) and the well-known substantial evidence standard (see, ECF No. 21 at 4), the appropriate judicial holding at the conclusion of such review is either to affirm or reverse that decision, or to remand for further proceedings.
[9] Tr. at 35.
[10] ECF No. 21 at 2 (citing transcript).
[11] *Id.*

to him then.[12] In that regard, the Agency re-opened the 2009 benefits application and awarded Wright surviving divorced spouse benefits based on his ex-wife's record effective retroactively to the 2009 date Wright first sought benefits to the date of Wright's full retirement age (70) in 2016.[13]

Wright then contested that finding, arguing that he would have claimed divorced spouse survivor benefits at the time of Sieber's death in 2005 if he had been earlier informed of his right to such benefits. In that regard he alleges first that his former sister-in-law and the funeral director failed to properly complete the SSA forms at the time of Sieber's death that would have alerted both him and the Agency to Wright's existence as a surviving divorced spouse.[14] Further, he asserted that Agency employees failed in their affirmative duty to bring up the issue of divorced spouse survivor benefits during Wright's 2008 visit to obtain a new Social Security card.[15]

At the 2017 hearing the ALJ found first that, while there was no reason to doubt that both Wright's former sister-in-law and the funeral director did not fully complete the SSA forms in 2005 that would have notified the Agency of Wright's existence, it was also true that these persons had no "positive duty to inform the Agency that [Wright] existed and had a potential survivorship claim."[16] Next, the ALJ concluded that Agency employees

---

[12] Tr. at 66.
[13] ECF No. 1, Ex. 2 at 1.
[14] *Id*. at 2.
[15] *Id*.
[16] *Id*. at 3.

who handled Wright's 2008 visit for a new card had no affirmative duty during that visit for a routine task to inquire as to Wright's potential status as survivorship beneficiary.[17]

The ALJ concluded by noting that his decision does not address the question of whether Wright is actually eligible for survivorship benefits for any period prior to 2009 (the date, as noted, they have already been awarded), but only determines that, in the absence of misinformation or error, any such earlier benefits cannot now be retroactively awarded.[18]

## Analysis

The Commissioner's decision here is judicially reviewed under the well-established "substantial evidence" standard. There are essentially four issues presented here by Wright, which will be individually addressed below.

    1.    Direct Agency conduct

First, as the Commissioner observes, Wright does not allege any instance where an Agency employee directly provided misinformation in response to a specific request concerning benefits.[19] It is true that federal statute[20] and agency regulations[21] both provide that any direct misinformation by an Agency employee that results in an individual failing to timely apply for benefits may be grounds for a later award of benefits. However, as the

---

[17] *Id.*
[18] *Id.*
[19] ECF No. 21 at 7.
[20] 42 U.S.C. § 402(j)(5).
[21] 20 C.F.R. § 404.633(c).

ALJ made clear, no Agency employee provided misinformation to Wright at any time. Rather, Wright's claims focus on purported failures to act in 2005 by his former sister-in-law and the funeral director, as well as by Agency employees in 2008 when Wright went to an Agency office for a new card.

2. Former sister-in-law; funeral director

As to the first allegation, concerning the former sister-in-law and the funeral director, the ALJ points out that the form completed by Sieber's family itself (SSA-1724) states that furnishing information to the Agency by means of the form "voluntary," and so there is no statute or regulation imposing any duty to exhaustively list every potential beneficiary.[22] Moreover, there was no duty on the funeral director, even if he would have been aware of Wright, to have named Wright on form SSA-721 which asks about a "widower" of the deceased, since Wright had been divorced from Sieber for many years before her death.[23]

3. Agency conduct at time of request for new card

Wright claims that an Agency employee essentially gave misinformation at the time he went in for a new card when the Agency employee failed to alert him to potential survivorship benefits. The ALJ, as noted, stated that such requests for a new card are

---

[22] ECF No. 21 at 8 (quoting record).
[23] *Id*. See also, *Scheuring ex rel. Scheuring v. Barnhart*, 2003 WL 21731300, at * 1 (D. New Hampshire July 25, 2003) (SSA-721 would not have referenced a woman who was never married to the deceased but now claims to be the mother of a child with the deceased).

"routine" and that absent a specific request for any additional information, the employee would have no reason to proceed further and ask about other issues. Indeed, Agency regulations provide that to establish a claim of Agency misinformation Wright would need to show first that the employee was required to provide that information in the carrying out of official duties, [24] and then that any misinformation was given "in response to a specific request … for information about [his] eligibility for benefits."[25]

By his own filings, Wright concedes that he was unaware of any potential entitlement to divorced spouse survival benefits at the time of his 2008 visit to obtain a new card and so he never raised the issue or asked a question in that regard.

4. ALJ denial of request to call witnesses at the hearing

Wright finally claims that the ALJ should have called witnesses to support his claim.[26] SSA regulations, however, state that a party requesting that witnesses be subpoenaed must state the facts that the witness is expected to prove and further state "why these facts could not be proven without issuing a subpoena."[27]

Any decision by an ALJ to deny a request for a subpoena is reviewed for abuse of discretion.[28] In this case, there was no factual dispute that the former sister-in-law and the funeral director did not list Wright on the forms they filled out, and there was likewise no

---

[24] 20 C.F.R. § 404.633(c)(2).
[25] 20 C.F.R. § 404.633(c)(4).
[26] ECF No. 15 at 4-5.
[27] 20 C.F.R. § 404.950(d)(2); see also, *Willis v. Sullivan*, 931 F.2d 390, 400 (6th Cir. 1991) ( ALJ in Social Security cases will issue subpoena only when necessary).
[28] *Luukkonen v. Comm'r*, 653 F. App'x 393, 403 (6th Cir. 2016) (citation omitted).

factual dispute that when Wright visited the Social Security office in 2008 to obtain a new card the Agency employee did not then raise an issue as to his potential entitlement to divorced spouse survivor benefits. Thus, with no factual issue requiring the testimony of additional witnesses, the matter before the ALJ was purely whether, on the facts as established, Wright was entitled as a matter of law to any relief.

Accordingly, there was no abuse of discretion in denying Wright's request for the testimony of witnesses.

## **Conclusion**

For the reasons stated, I recommend finding that the decision of the Commissioner here is supported by substantial evidence and so should be affirmed.

IT IS SO RECOMMENDED.

Dated: December  23, 2019                                         s/William H. Baughman Jr.
                                                                  United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[29]

---

[29] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh g denied*, 474 U.S. 1111 (1986).